Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ANAMAR DEVELOPERS, INC.<br><br>Demandante Apelada<br><br>v.<br><br>MULTINAITONAL INSURANCE COMPANY<br><br>Demanda Apelante | TA2026AP00323<br><br>Consolidado<br><br>TA2026CE00485 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Civil Núm.: PO2020CV01741<br><br>Sobre: Incumplimiento de Contrato, Daños y Perjuicios |
| ANAMAR DEVELOPERS, INC.<br><br>Demandante Recurrida<br><br>v.<br><br>MULTINAITONAL INSURANCE COMPANY<br><br>Demanda Peticionaria | | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Civil Núm.: PO2020CV01741<br><br>Sobre: Incumplimiento de Contrato, Daños y Perjuicios |

Panel especial integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli.

Candelaria Rosa, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de mayo de 2026.

Comparece Multinational Insurance Company mediante los recursos de epígrafe y solicita que revoquemos la *Sentencia* del Tribunal de Primera Instancia, Sala Superior de Ponce, emitida el 26 de febrero de 2026. En dicho dictamen, el Tribunal de Primera Instancia denegó la *Oposición a Solicitud de Sentencia Parcial y Solicitud de Impugnación del Proceso de Valoración* presentada por Multinational y decretó ha lugar la solicitud de Anamar Developers, Inc., para que se

ejecutara la determinación o laudo que se emitió en el proceso de *Appraisal* o valoración de daños, al amparo de la Ley 242-2018, *infra*. Igualmente, vía *certiorari* y solicitud de consolidación de recursos, solicita que dejemos sin efecto la *Resolución* que emitió dicho foro el 27 de marzo de 2026, en la que autorizó el memorando de costas presentado por Anamar.

El 1 de abril de 2026, Anamar presentó una *Moción de Desestimación y/o para que se Acoja la Apelación Civil como Certiorari* […]. Así, el 7 de abril de 2026, decretamos ha lugar la petición y acogimos el recurso de apelación como un *certiorari*. Sin embargo, Multinational se opuso al cambio mediante la presentación de una *Moción de Reconsideración*. Atendida la solicitud, le concedimos un breve término a Anamar para que expresara su posición. En cumplimiento con lo ordenado, Anamar presentó su alegato en oposición y, además, mostró su posición respecto a la *Moción de Reconsideración*. Con el beneficio de la comparecencia de las partes, reconsideramos nuestra determinación de acoger la apelación como *certiorari*, por razón de la distinción que se advierte entre un laudo de arbitraje frente a una valoración y porque nuestro reglamento solo ha precisado acoger el primero por la vía discrecional.

Asimismo, advertimos que, por las razones que expondremos, confirmamos el recurso objeto de la referida apelación, a la vez que expedimos y modificamos la determinación objeto del *certiorari*. Veamos.

El pleito de epígrafe se originó el 26 de octubre de 2020, cuando Anamar presentó una *Demanda* contra Multinational por incumplimiento contractual y daños y perjuicios. Del escrito de

apelación, surge que Multinational emitió una póliza de seguro de propiedad a favor de Anamar para asegurar el edificio Las Américas Housing, situado en el municipio de Ponce. Tras el terremoto ocurrido en el área sur de Puerto Rico el 7 de enero de 2020, el edificio asegurado sufrió daños estructurales y arquitectónicos que Anamar reclamó a la aseguradora. Sin embargo, y a pesar de haber reconocido cubierta, Multinational ofreció pagar una cantidad de dos millones setecientos veinticinco mil quinientos cuarenta y cuatro ($2,725,544.00) dólares, frente al valor de la pérdida estimada por los peritos de Anamar de trece millones ochocientos cuarenta y cuatro mil seiscientos sesenta y dos ($13,844,662.00) dólares.

Como consecuencia de esta disputa, y luego de múltiples trámites procesales, las partes sometieron una *Moción Conjunta Solicitando Orden de Referido al Proceso de Valorización*. A tenor, el 5 de febrero de 2021, el foro recurrido declaró ha lugar la moción y refirió la controversia entre las partes al procedimiento de valoración o *appraisal* establecido en la Ley Núm. 242-2018 (2018 [Parte 2] Leyes de Puerto Rico 2339) y la Carta Normativa Núm. CN-2019-248-D, para dilucidar lo siguiente:

a. La controversia relacionada a los daños de las losas estructurales de los pisos del edificio asegurado y la diferencia de criterio de los consultores estructurales de las partes sobre el particular.

b. El costo de reparación de los daños directos ocasionados por el terremoto al edificio asegurado o el costo de reemplazar el edificio asegurado si se determina que los daños directos sufridos por el terremoto requieren el reemplazo del edificio.

Después de varias incidencias procesales, el 5 de mayo de 2023, el árbitro Manuel A. Oliveras emitió un *Laudo Intermedio* en el que resolvió la primera controversia sobre los daños de las losas estructurales de los pisos del edificio asegurado. Así, determinó que "no

se justifica la demolición de las losas estructurales de los pisos del edificio", por lo que procedía, entonces, la evaluación del costo de reparación de los daños directos ocasionados al edificio.

A esos fines, las partes seleccionaron al ingeniero estructural José Izquierdo Encarnación, como el árbitro que determinaría el costo de la reparación del edificio. Después de varias reuniones de valoración entre el árbitro designado y los tasadores de las partes, el 20 de marzo de 2025, el árbitro Izquierdo Encarnación presentó a las partes la valoración final del costo de reparación del edificio asegurado, que ascendió a trece millones cuarenta y un mil doscientos treinta y cuatro dólares con sesenta y cuatro centavos ($13,041,234.64).

Dicha determinación fue aceptada por los tasadores de Anamar, más no por Multinational, que se negó a pagar a la asegurada el valor de los daños establecidos en el proceso de *appraisal*. Mediante correo electrónico enviado al árbitro Izquierdo Encarnación el 27 de marzo de 2025, la aseguradora cuestionó dicha decisión y solicitó reconsideración. Al día siguiente, Anamar manifestó su conformidad con la valoración, mediante correo electrónico enviado al árbitro.

El 24 de abril de 2025, el árbitro Izquierdo Encarnación notificó a las partes un *Memorando de Cierre Sobre Controversia*. Así pues, el 27 de mayo de 2025, Anamar presentó ante el Tribunal una *Moción Solicitando se Dicte Sentencia Parcial Poniendo en Vigor la Determinación o Laudo del Árbitro en el Proceso de Valoración Ordenado en el Presente Caso y para la Continuación de los Procedimientos*. En desacuerdo, Multinational se opuso a la solicitud de Anamar y sometió una […] *Solicitud de Impugnación del Proceso de Valoración*.

Evaluadas las posiciones de las partes, el 26 de febrero de 2026, el Tribunal de Primera Instancia emitió la *Sentencia* apelada, en la que declaró *No Ha Lugar* la oposición de Multinational y puso en vigor la determinación final del procedimiento de valoración. En consecuencia, ordenó a la aseguradora a pagar a Anamar la suma de trece millones cuarenta y un mil doscientos treinta y cuatro dólares con sesenta y cuatro centavos ($13,041,234.64), por concepto de los daños ocasionados al edificio asegurado.

Posteriormente, Anamar presentó un *Memorando de Costas* mediante el cual solicitó el pago de doscientos noventa y nueve mil seiscientos noventa y uno dólares con cincuenta y ocho centavos ($299,691.58) por concepto de costas. Las costas reclamadas corresponden al pago de los árbitros que participaron en el procedimiento de *appraisal* y los honorarios pagados a los peritos contratados, entre otras partidas. Multinational se opuso a la petición, por entender que el pago de los árbitros debe ser por partes iguales entre la aseguradora y el asegurado. Además, arguye que a base de las normas que gobiernan el proceso tampoco corresponde el pago como costas de los tasadores de Anamar. Atendidas las peticiones de las partes, el Tribunal recurrido autorizó el *Memorando de Costas* que sometió Anamar.

Sobre el recurso de apelación, TA2026AP00323, Multinational invoca varios fundamentos para revocar la *Sentencia* recurrida. En el primero, alude a que el Tribunal de Primera Instancia la privó de su derecho a impugnar la determinación del árbitro, al aplicar retroactivamente y por analogía el término de treinta (30) días que establece la Regla 106 del Reglamento del Código de Seguros de Puerto

Rico, Reglamento Núm. 9519 de 1 de diciembre de 2023, para concluir que esta no impugnó el laudo dentro de dicho plazo. Sostiene que en este caso no aplica dicha regla, pues su aprobación fue posterior a los hechos del pleito. Añade que el Tribunal erró al descartar, sin más, los argumentos válidos que esbozó en contra de la determinación final del árbitro, en violación a su derecho de impugnar la referida decisión.

También, Multinational argumenta que en el supuesto de que aplicara el plazo de 30 días, este se interrumpió cuando Anamar presentó su petición para poner en vigor la valoración emitida. En su opinión, Multinational tenía veinte (20) días para presentar su oposición a la implementación del laudo, conforme establece la Regla 8.4 de Procedimiento Civil (32 LPRA Ap. V).

En segundo lugar, Multinational alega que la determinación del árbitro no es vinculante, pues no cuenta con la firma o anuencia de ninguno de los tasadores que participaron en el procedimiento de valoración, conforme lo establece el Artículo 11.190. del Código de Seguros (26 LPRA sec. 1119). A su entender, el Tribunal recurrido interpretó erradamente la norma al sustituir la anuencia que debe prestar el tasador a la determinación del árbitro, por la aprobación notificada por los representantes legales de Anamar. Añade que no son los representantes legales de las partes, sino el tasador de alguna de aquellas el que debe aprobar la determinación del árbitro.

Por otro lado, arguye que dicho Tribunal incidió al no permitir la aplicación de las exclusiones, limitaciones y condiciones del contrato de seguro, a las partidas específicas en el estimado de daños. Razona que el tribunal *a quo* se equivocó al inferir que Multinational renunció a la aplicación de las cláusulas, términos y condiciones del contrato

cuando reconoció la existencia de cobertura para la reclamación presentada. Aduce, que, aunque admitió cobertura general para el evento de un terremoto, nunca reconoció que el total de las partidas en la valoración constituyera una pérdida física directa provocada por dicho evento.

Por último, cuestionó que el Tribunal de Primera Instancia no haya revisado las determinaciones del árbitro, amparándose en que el proceso de valoración solo puede ser impugnado si se demuestra que el árbitro incurrió en falta de autoridad, fraude manifiesto, parcialidad, error manifiesto, abuso de discreción o mala conducta del árbitro. A su vez, añade que el foro recurrido erró al concluir que el árbitro no incurrió en ninguna de las mencionadas causales.

Al respecto, la Ley 242-2018 enmendó el Artículo 11.150 del Código de Seguros (Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como el Código de Seguros de Puerto Rico, 26 LPRA sec. 1115) con el propósito de incorporar el proceso de valoración a dicho cuerpo de normas. En particular, dispuso que se incluya en toda póliza de seguro de propiedad, comercial o personal, una cláusula "que disponga para la resolución de disputas relacionadas con el valor de la pérdida o daños en una reclamación a base del proceso de '*appraisal*'" o valoración. Esto, a opción del asegurado y sin que ello signifique una limitación a la facultad de este de acudir a los tribunales. Íd.

La precitada Ley, también, enmendó el Artículo 11.190 del Código de Seguros, *supra*, que en su parte pertinente expresa que:

> Siempre que no suplante o constituya una renuncia del derecho del asegurado a iniciar una acción judicial en los tribunales, se considerará válida una estipulación o cláusula de valoración "appraisal" contenida en pólizas de seguros de propiedad en la línea

comercial o personal, que disponga que cualquiera de las partes podrá solicitar por escrito someter ante un árbitro imparcial y competente la resolución de disputas, en torno a la valoración de daños o pérdida **en una reclamación en que el asegurador haya aceptado que está cubierta**. (Énfasis suplido).

.     .     .     .     .     .     .     .     .     .

El árbitro será seleccionado, por mutuo acuerdo, entre el tasador *"appraiser"* del asegurador y el tasador *"appraiser"* del asegurado, […]. El árbitro no tendrá autoridad para decidir controversias de cobertura o cualquier cuestión de derecho. La decisión del árbitro en el proceso de valoración será vinculante, cuando dos (2) de las tres (3) partes (tasador de asegurado, tasador del asegurador y árbitro) lleguen a un acuerdo, sin perjuicio de que la parte inconforme pueda acudir al Tribunal de Primera Instancia a impugnar la decisión.

Sobre el proceso de valoración o *appraisal*, la Exposición de Motivos de la precitada ley expresa que este "está diseñado para brindar una alternativa rápida y de carácter no-contenciosa adicional, que facilite a las partes llegar a un acuerdo en el pago por el valor justo de la reclamación". Exposición de Motivos de la Ley Núm. 242-2018, *supra*, pág. 2.

En atención a las nuevas enmiendas al Código de Seguros, la Oficina del Comisionado de Seguros emitió la Carta Normativa con el fin de establecer unas guías que rijan el proceso de *appraisal* para la resolución de conflictos sobre la valoración de daños o pérdida en una reclamación bajo una póliza de seguro de propiedad comercial o personal. Véase Carta Normativa Núm. CN-2019-248-D, pág. 2. En su parte pertinente, la Sección B (5) de la Carta Normativa Núm. CN-2019-248-D, pág. 3, reitera lo dispuesto en la Ley Núm. 242-2018, *supra*, sobre el carácter vinculante de las determinaciones del árbitro en el proceso de *appraisal*, siempre que estas sean acordadas por dos (2) de las tres (3) partes—tasador de asegurado, tasador del asegurador y árbitro—que participan en el proceso. Ello, "sin perjuicio de que la parte inconforme pueda acudir al Tribunal de Primera Instancia a impugnar la decisión". Íd. La referida determinación se emitirá por

escrito y con un desglose detallado de la cantidad de dinero correspondiente a cada una de las partidas de la reclamación objeto del proceso de valoración. Íd., Sec. D(2)(j), pág. 5.

Según la jurisprudencia federal, después de emitido la decisión final de valoración, una parte no podrá cuestionar la imparcialidad de un árbitro en un proceso de *appraisal* basado en información que, mediante diligencia, debió haberse descubierto antes de que los procedimientos comenzaran. *BRS Real Estate, Inc. v. Certain Underwriters al Lloyd's, London*, 110 F.4th 442 (1er Cir. 2024) (citando a *VS Haseotes & Sons, LP ex rel. Bentas v. Haseotes*, 819 A.2d 1281 (R.I. 2003)). Más aun, los tribunales de primera instancia no estarán en posición de evaluar las reclamaciones sobre los datos o errores legales que un árbitro haya cometido en el proceso de arbitraje. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 US 29 (1987). Más aun, ciertos tribunales federales y estatales de Estados Unidos han extendido esta deferencia a los procedimientos de valoración. A.S. Rau, *The Culture of American Arbitration and the Lessons of ADR*, 40 Tex. Int'l L.J. 449 (2005). Véase *Sanitary Farm Dairies, Inc. v. Gammel*, 195 F.2d 106 (8vo Cir. 1952). Aunque no existe uniformidad en cuanto a la aplicación de deferencia en casos que involucren procedimientos de *appraisal*, una parte de los tribunales operan bajo la premisa de que las determinaciones de estos árbitros serán vinculantes excepto de existir injusticia manifiesta, fraude, colusión, abuso de discreción o mala conducta, especialmente cuando las partes se sometieron voluntariamente al procedimiento de *appraisal*. Véase *Mesco Manufacturing, LLC v. Motorists Mutual Insurance Company*, 145 F.4th 705 (7mo Cir. 2025); *Villas at Winding Ridge v. State Farm Fire*

*and Casualty Company*, 942 F.3d 824 (7mo Cir. 2019); *JM Walker LLC v. Acadia Ins. Co.*, 356 Fed. Appx. 744 (5to Cir. 2009); *Sanitary Farm Dairies, Inc. v. Gammel*, *supra*; A.S. Rau, *supra*.

Por otro lado, el procedimiento de valoración en controversia comenzó en el 2021. A esos efectos, la Regla 106 del Reglamento del Código de Seguros es inaplicable al caso de marras, toda vez que tal Regla no tiene vigor sobre los procedimientos de valoración ya iniciados. Regla 106, Reglamento Núm. 9519 de 1 de diciembre de 2023, Art. 26, pág. 19. Por lo tanto, el término de treinta (30) días desde la notificación de la decisión del árbitro para acudir al Tribunal de Primera Instancia no opera de forma preceptiva en este caso y no se discutirá.

Por otra parte, nuestro ordenamiento considera como ley del caso todo derecho y obligación que ha sido objeto de adjudicación y dictamen firme en el ámbito judicial. *Berkan et al. v. Mead Johnson Nutrition*, 204 DPR 183 (2020) (citando a *Cacho Pérez v. Hatton Gotay y otros*, 195 DPR 1 (2016); *Mgmt. Adm. Servs. Corp. v. ELA*, 152 DPR 599 (2000)). Mediante esta doctrina, los tribunales evitarán rexaminar asuntos ya considerados dentro de un mismo caso para velar por el trámite ordenado y expedido de los litigios, más promover la estabilidad y certeza del derecho. Íd. (citando a *Mgmt. Adm. Servs. Corp. v. ELA*, *supra*; *Núñez Borges v. Pauneto Rivera*, 130 DPR 749 (1992); *Torres Cruz v. Municipio de San Juan*, 103 DPR 217 (1975)). Dichos asuntos, para que sean considerados como la ley del caso, deberán resolverse en sus méritos, es decir, que se adjudiquen dentro de un dictamen que resuelva la controversia interlocutoria presentada. Véase C.E. Díaz Olivo, *Derecho Procesal Civil*, 76 Rev. Jur. UPR 803 (2007). A manera

de excepción, la doctrina de la ley del caso no aplicará cuando el caso regresa para la evaluación y consideración del tribunal y este entiende que sus determinaciones previas fueron erróneas y podrían causar una grave injusticia. Íd. (citando a *Cacho Pérez v. Hatton Gotay y otros*, *supra*; *Noriega v. Gobernador*, 130 DPR 919 (1992)).

En relación con la apelación contenida en el recurso TA2026AP00323, el Tribunal de Primera Instancia actuó correctamente al confirmar la valoración final del Ing. Izquierdo Encarnación. Veamos.

Por una parte, unque la Regla 106 es inaplicable en el presente caso, la decisión del Tribunal apelado de que Multinational objetó tardíamente a la valoración final resultó razonable desde una perspectiva de incuria, pues del expediente se desprende que de Anamar no haber acudido al Tribunal apelado para la confirmación de la valoración Multinational no se hubiera presentado ante dicho foro para objetar la determinación del árbitro, por lo que no resultó arbitrario que el Tribunal utilizara el término ahora vigente de forma analógica. Al contrario, la pretendida idea de que una parte tendría un plazo perpetuo para presentar su acción sería jurídicamente insostenible, sobre todo por la intención legislativa expresa de brindar un proceso de *appraisal* expedito. Luego, tuvo razón el Tribunal recurrido al interpretar que el hecho de que Multinational haya objetado la valoración final cincuenta y tres (53) días después de su notificación constituyó una oposición tardía.

De otra parte, el Código de Seguros y la Carta Normativa en ningún momento indican que la valoración final en un proceso de *appraisal* debe ser acordada por dos (2) de las tres (3) partes mediante

firma. Asimismo, Multinational reconoció la cobertura de los daños dispuestos en este caso y no objetó la aseveración del Tribunal en ese sentido mediante *Resolución* del 21 de enero de 2021, la cual, consecuentemente, advino ley del caso.

De otro lado, sobre la alegación de que Multinational nunca recibió el informe de Desarrollos Metropolitanos antes del árbitro presentar su valoración final, el cuestionamiento de la relación con estos del Ing. Izquierdo Encarnación y la situación del *grant* del HUD a favor de Anamar, diferimos nuestro criterio a la discreción del Tribunal de Primera Instancia en ausencia de fundamentación fáctica que le desmienta. Además, el *Memorando de Cierre Sobre Controversia* y la tabla de valoración final del Ing. Izquierdo Encarnación son suficientemente detallados y claros como para informar a las partes el razonamiento utilizado por el árbitro al tomar su determinación.

Con respecto a las particularidades de los datos, los métodos de evaluación y las conclusiones del árbitro sobre el costo de los daños, no se demuestra que la determinación del Ing. Izquierdo Encarnación deba ser despojada de deferencia, a la luz de la señalada jurisprudencia federal y estatal de Estados Unidos. Igualmente, en cuanto a la alegación de Multinational de que la cifra correcta debería ser doce millones novecientos setenta y tres cuatrocientos y seis dólares con cuarenta y siete centavos ($12,973,406.47), lo cierto es que su razonamiento no fundamenta -y nuestros propios cálculos no avalan- dicha cantidad, por lo que no variaremos la presentada por el árbitro de trece millones cuarenta y un mil doscientos treinta y cuatro dólares y sesenta y cuatro centavos ($13,041,234.64).

Con relación a la solicitud de *certiorari* contenida en el recurso TA2026CE00485, presentada por la misma aseguradora. En resumidas cuentas, Multinational argumenta que el Tribunal recurrido erró al (1) conceder las costas a favor de la Anamar, debido a que la *Sentencia* emitida es improcedente, nula e inoficiosa; (2) conceder como costas las partidas reclamadas por Anamar por concepto de pagos a los árbitros del proceso de *appraisal*; y (3) conceder como costas las partidas reclamadas por la asegurada por concepto de pagos a consultores. Presentada la oposición de Anamar, resolvemos.

El auto de *certiorari* es el vehículo procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos, tanto en el ámbito provisto por la Regla 52.1 de Procedimiento Civil de 2009 (32 LPRA Ap. V), como de conformidad con los criterios dispuestos por la Regla 40 de este Tribunal de Apelaciones, (4 LPRA Ap. XXII-B). Véase, también, *IG Builders v. BBVAPR*, 185 DPR 307 (2012). En tal sentido, la función de un tribunal apelativo frente a la revisión de controversias a través del *certiorari* requiere valorar la actuación del foro de primera instancia y predicar su intervención en si la misma constituyó un abuso de discreción; en ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia. *800 Ponce de León v. AIG*, 205 DPR 163 (2020); *Citibank v. ACBI*, 200 DPR 724 (2018).

En cuanto a los honorarios de los tasadores y el árbitro, el Artículo 11.190(3) del Código de Seguros, *supra*, establece que los honorarios del árbitro serán costeados entre el asegurador y asegurado

por partes iguales. No obstante, cada parte deberá pagar los del tasador que los represente durante el procedimiento de valoración.

En iguales términos, la Sección H de la Carta Normativa Núm. CN-2019-248-D, pág. 7, dispone que los honorarios del árbitro "serán costeados entre el asegurador y el asegurado, en igual proporción. […] Los honorarios no deberán exceder de $125 por hora, salvo circunstancias extraordinarias que justifiquen la tarifa en exceso". Igualmente, establece que "[c]ada parte será responsable de costear los honorarios de los tasadores que los representen en el proceso de 'appraisal'". Íd.

Por otro lado, las costas se concederán a la parte a cuyo favor se resuelva el pleito, excepto en aquellos casos en que se disponga lo contrario por ley. Regla 44.1 de Procedimiento Civil, *supra*. Véase, también, Art. 27.165 de la Ley Núm. 77 de 19 de junio de 1957 (26 LPRA sec. 2716e). Esto es a razón de que la parte que reclama aquello a lo cual no tiene razón, obliga a otra a recurrir a los tribunales para hacer valer su valor y que litiga con el propósito de retrasar la justicia, es quien debe pagar por los gastos del pleito. *Garriga, Jr. v. Tribunal Superior*, 88 DPR 245 (1963). El Tribunal solamente podrá conceder las costas en cuanto a los gastos en que se incurrió necesariamente en la tramitación de un pleito o que dicho foro, en su discreción, estima que una parte litigante debe reembolsar a otra. Íd. Una vez reclamadas estas costas, la imposición de costas a favor de la parte victoriosa será mandatorio, aunque no de forma automática, ya que se tendrá que presentarse oportunamente un memorando de costas en el que se precisen los gastos incurridos. *Rosario Domínguez v. ELA*, 198 DPR 197 (2017) (citando a *Colón Santos v. Coop. Seg. Mult. PR*, 173 DPR

170 (2008); *JTP Dev. Corp. v. Majestic Realty Corp.*, 130 DPR 456 (1992)). El Tribunal tendrá amplia discreción para evaluar la razonabilidad y determinar la necesidad de los gastos detallados. Íd. (citando a *Maderas Tratadas v. Sun Alliance et al.*, *supra*; *Auto Servi, Inc. v. ELA*, 142 DPR 321 (1997)).

Discutido lo anterior, y en lo relacionado con el recurso TA2026CE00485, el Tribunal de Primera Instancia erró al aprobar un *Memorando de Costas* que no respetaba las directrices del Código de Seguros y la Carta Normativa. Del total de doscientos noventa y nueve mil seiscientos noventa y un dólares con cincuenta y ocho centavos ($299,691.58) que Anamar reclama en su *Memorando de Costas*, doscientos noventa y nueve mil quinientos cuarenta y uno dólares con cincuenta y ocho centavos ($299,541.58) corresponden al proceso de valoración. El Código de Seguros y la Carta Normativa expresan claramente que las partes pagarán en partes iguales la factura de cada árbitro, además de que cada parte pagará por sus propios tasadores. Por tanto, Anamar carece del derecho a requerir que Multinational le reembolse lo pagado por los servicios que todos estos rindieron durante un proceso de *appraisal* y, en efecto, Anamar solamente podrá solicitar el reembolso por los gastos incurridos durante el litigio ante el Tribunal de Primera Instancia.

Por los fundamentos expresados, confirmamos la *Sentencia* apelada, a la vez que expedimos el auto de *certiorari* y modificamos la *Resolución* recurrida a fin de aprobar el *Memorando de Costas* de Anamar solamente en cuanto a los gastos incurridos durante el litigio ante el Tribunal de Primera Instancia y excluyendo las cantidades reclamadas a partir del proceso de valoración.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones